DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Ariggle Moore, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying temporary total disability compensation from January 4, 2001 through January 17, 2002, and to enter a new order granting the requested compensation.
 {¶ 2} This matter was referred to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate concludes that relator failed to demonstrate that the commission abused its discretion and found its decision to be supported by some evidence. The magistrate determined that this court should deny the requested writ.
 {¶ 3} Relator filed objections to the decision of the magistrate arguing that the magistrate erred by finding that the C-84 certification submitted by Dr. Nalluri was not part of the record and that the commission was within its discretion in denying the requested compensation. Respondent Industrial Commission concedes that the magistrate was in error in stating the Nalluri C-84 was not part of the stipulated record. However, respondent commission also argues that the basis for upholding the denial of compensation was not the purported absence of the C-84 in question, but the conclusion by Dr. Byrnes that relator's allowed condition did not prevent relator from returning to his former position of employment. Respondent commission argues that the commission did not violate State ex rel. Zamora v. Indus.Comm. (1989), 45 Ohio St.3d 17 by relying on Dr. Byrnes' report because the record does not contain a decision by the commission rejecting that report explicitly or implicitly. Accordingly, we sustain relator's objections insofar as the magistrate was in error in finding that Dr. Nalluri's C-84 was not part of the stipulated record. However, that error is not dispositive and we overrule relator's objection to the magistrate's ultimate determination that the commission's decision was supported by some evidence and was in accordance with law.
 {¶ 4} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts. We also agree with her conclusions of law except her statement that Dr. Nalluri's C-84 was not part of the stipulated record. Accordingly, we modify her decision in part to reflect that said report was part of the record. We further believe, however, that the magistrate applied the correct law and we adopt her decision as modified as our own. In accordance with that decision, the requested writ is denied.
Objections sustained in part; overruled in part; writ ofmandamus denied.
Brown and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Ariggle Moore, : Relator, : v. : No. 03AP-326 Industrial Commission of Ohio : (REGULAR CALENDAR) and WCI Steel, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 31, 2003 Schiavoni, Schiavoni Bush Co., L.P.A., Shawn Muldowney andJoseph J. Bush, III, for relator.
Jim Petro, Attorney General, and Jacob Dobres, for respondent Industrial Commission of Ohio.
Buckingham, Doolittle Burroughs, LLP, and Deborah Sesek,
for respondent WCI Steel, Inc.
IN MANDAMUS
 {¶ 5} In this original action in mandamus, relator, Ariggle Moore, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for temporary total disability ("TTD") based on his allowed mental disorder from January 4, 2001 through January 17, 2002, and to issue a new order granting the requested compensation.
Findings of Fact:
 {¶ 6} 1. In January 2000, Ariggle Moore ("claimant") fractured his left elbow at work, and his workers' compensation claim was allowed for that condition.
 {¶ 7} 2. In July 2000, claimant, at 55 years of age, took a retirement based on 30 years of service.
 {¶ 8} 3. On January 4, 2001, claimant consulted Anil C. Nalluri, M.D., a psychiatrist, who concluded that claimant had developed "Depressive Disorder Not Otherwise Specified" as a result of the industrial injury. He stated that claimant was "temporary and totally incapacitated."
 {¶ 9} 4. In March 2001, claimant was examined on behalf of the employer by a psychologist, Robert L. Byrnes, Ph.D., who submitted a lengthy report. Under the heading "Findings from Psychological Assessments," Dr. Byrnes reported the clinical findings, observing inter alia that the objective testing did not yield an elevated score for depression:
Mr. Moore was oriented in all spheres and his sensorium was clear. There was no sign of a thought disorder or delusions. He denied ever having hallucinations. He ruminates somewhat about his work injury and its sequelae.
Mr. Moore's mood was normal to mildly depressed. His affect was appropriate. He denied suicidal or homicidal ideation.
Mr. Moore appears to be of at least average intellectual ability. His ability to concentrate and remember were good. This examinee retains the capacity to learn.
Mr. Moore's problem solving skills, judgement and insight were good.
Mr. Moore's MMPI results were valid and interpretable. The validity scales suggest that Mr. Moore endorsed items relevant to some particular problem area. His only elevated clinical scale was Scale 1 (Hypochondriasis) which was mildly elevated. Patients with this scale elevation often have body concerns and complain of chronic fatigue, pain and weakness. They may also be pessimistic, dissatisfied and unhappy. Frequently they hold high expectations and are critical of others. MMPI Scale 2 (Depression) was not elevated on Mr. Moore's test.
 {¶ 10} In his discussion, Dr. Byrnes stated:
Mr. Moore is a 56-year old man who reports a history of work injury, impairment, some pain and problems with mental adjustment. He denies any history of mental health problems or treatment prior to being injured at work on 01/06/2000. Subsequently he had surgery and a period of recovery. After recuperating he returned to work on a light duty; was eventually found to be maximally medically improved. Around that time he retired. Mr. Moore appears to have experienced some difficulty coping with his work injury and its sequelae. He reports conflicts with his employer at the time of retirement. Subsequently he consulted a psychiatrist who diagnosed anxiety and depression (he has been treated with antidepressant medication). He says that he is frustrated and bored since retirement and "pissed off at the company." He reports some continuing irritability and depression which I judged to be mild.
 {¶ 11} Under the heading "Diagnosis," Dr. Byrnes stated the following diagnosis on Axis I: "311.00 Depressive Disorder, Not Otherwise Specified." On Axis IV, Dr. Byrnes noted these psychosocial stressors: "Physical impairment, some continuing pain, retirement, financial pressures."
 {¶ 12} Under "Opinion," Dr. Byrnes stated his conclusion that claimant suffered from Depressive Disorder Not Otherwise Specified. However, he found that the condition was mild and would not prevent claimant from performing remunerative employment:
Based on the findings of the history and examination it is my opinion that Mr. Moore meets DSM-IV criteria for (Depressive Disorder, Not Otherwise Specified). Based on an earlier examination, Dr. Nalluri felt that Mr. Moore was moderately depressed. Based upon my current exam, I would describe Mr. Moore's depression as mild. In fact, his MMPI profile was not even elevated on Scale 2 (depression). He still reportedly sometimes feels down and more often feels irritable.
* * *
* * * Mr. Moore's mental disorder (Depressive Disorder, Not Otherwise Specified) would not currently prevent him from working in his former position a WCI Steel or in any other remunerative position where he is otherwise able and qualified.
However, with respect to causation of the depressive disorder, Dr. Byrnes expressed uncertainty:
* * * [I]t is questionable whether Mr. Moore's depressive disorder is really a direct and proximate result of his 01/06/2000 work injury. He denies any history of mental health problems or treatment before being injured. He says that his work injury and its sequelae were somewhat stressful. However, in the examination it was my impression that the real stressor for this examinee prior to seeking mental health treatment was his retirement. He claims the retirement was forced by his employer. The employer says that he sought treatment on a voluntary basis.It would be useful to clarify this issue relative to theunderlying cause of his depression.
(Emphasis added.)
 {¶ 13} 5. In March 2001, a district hearing officer ("DHO") denied an additional allowance for depressive disorder, stating reliance on Dr. Byrnes' opinion as to causation.
 {¶ 14} 6. In May 2001, a staff hearing officer ("SHO") vacated the DHO order, noting that Dr. Byrnes "did not address the issue of causation" in terms of sufficient medical certainty. The SHO noted that Dr. Byrnes had indicated that the issue of causation could be determined only after reviewing additional records that were not available to him. The SHO granted the additional allowance based on Dr. Nalluri's opinion of causation. An appeal to common pleas court was dismissed.
 {¶ 15} 7. In September 2001, Dr. Nalluri submitted a form C-9, diagnosing "Depressive Disorder NOS 311" caused by the industrial injury and opining that claimant was unable to return to work, but leaving blank the dates of disability.
 {¶ 16} 8. In November 2001, claimant was examined by Mark A. Cohen, Psy.D., who stated that the interview was discontinued due to claimant's resistance and that the resistance continued during testing. Claimant returned in December 2002 to retake two tests. According to Dr. Cohen, personality tests suggested "longstanding characterological issues and a personality style that consists of anti-social, narcissistic, passive aggressive, and compulsive features." Cognitive tests indicated that claimant was attempting to exaggerate his problems, which could be "either an attempt to present himself as having more difficulties than he truly does or a passive-aggressive expression of his anger and frustration with the evaluation." Dr. Cohen found "no indication of any depression more than perhaps some mild dysphoria." He diagnosed "V62.89 Phase of life problem (Adjustment to retirement)" and "Narcissistic, passive-aggressive, anti-social, and compulsive personality traits."
 {¶ 17} 9. In December 2001, claimant was examined by Stanley J. Palumbo, Ph.D., who concluded that claimant had sustained a ten percent impairment as a result of his depressive disorder.
 {¶ 18} 10. On January 9, 2002, claimant was examined by Sanford R. Wolf, M.D., who submitted a detailed report (13 pages single-spaced). He concluded as follows:
To summarize the large amount of data that I have presented, it is my opinion, to a reasonable degree of medical certainty, that the claimant does not have Depressive Disorder, Not Otherwise Specified at present, and to the extent that such can be measured by his current words, did not have Depressive Disorder, Not Otherwise Specified in the past. It is my opinion, to a reasonable degree of medical certainty, for the reasons that I have enumerated above, that the claimant, following his retirement, experienced a "Phase of Life Problem" in adjusting to his retirement that involved periods of mild dysphoria, as well as frustration, increased irritability, and an accentuation of his longstanding personality traits of stubbornness, rigidity, and longstanding anger. The state that I have described is similar to that experienced by many people who retire from long time active jobs. I find no evidence at all that such periods of mild dysphoria (just described) that the claimant probably experienced post retirement were present following his injury of January 6, 2000, until after his retirement. The claimant does not think that the treatment with Dr. Nalluri has resulted in any change in the was he thinks, feels, or perceives himself. I agree with him. The psychiatric treatment that Dr. Nalluri is administrating is, in my medical opinion, excessive and, most likely, unnecessary.
I have no idea what Dr. Nalluri is writing about when he considers the claimant to be "temporar[il]y and totally incapacitated." * * *
 {¶ 19} 11. On January 17, 2002, Dr. Nalluri reported that claimant had attained maximum medical improvement ("MMI") for his depressive disorder.
 {¶ 20} 12. In May 2002, claimant filed a motion requesting TTD compensation from January 4, 2001 to the present.
 {¶ 21} 13. In August 2002, a DHO granted TTD compensation from January 4, 2001 to January 16, 2002, in reliance on Dr. Nalluri's reports.
 {¶ 22} 14. In October 2002, an SHO affirmed.
 {¶ 23} 15. In February 2003, the members of the commission heard the employer's appeal. The commission denied TTD as follows, in pertinent part:
* * * The employer contends that the various reports of Dr. Nalluri are conflicting, confusing, and contradictory. The Industrial Commission agrees that Dr. Nalluri's reports are internally inconsistent and contradictory to the extent they cannot support a period of temporary total disability compensation.
For example, the C-84 report, dated 05/09/2002, states that the injured worker was temporarily and totally disabled from 01/04/2001 to 08/15/2002. However, in a report dated 01/17/2002, Dr. Nalluri opines that the injured worker has reached maximum medical improvement with a 25% permanent partial disability.
When read together, the reports are contradictory. Both of these reports were prepared over one year after the start of the alleged disability period. The 05/09/2002 C-84 report states the period of disability began on 01/04/2001 and the report dated 01/17/2002 states the injured worker has reached maximum medical improvement. The 01/17/2002 report does not identify or mention any period of disability due to the allowed depressive disorder preceding 01/17/2002 and further notes that Dr. Nalluri had only seen the injured worker on 01/04/2002 and 10/31/2001. The C-84 report offers no explanation for the contradictory opinion. The Industrial Commission therefore finds that these reports cannot be relied upon to support an award of temporary total disability.
There is no other evidence of the injured worker's alleged temporary and total disability from the allowed psychological condition from 01/04/2001 thru 01/16/2002, or beyond that date. Moreover, the 03/01/2001 examination report of Dr. Robert L. Byrnes, Ph.D., clearly and convincingly rejects the injured worker allegation that he is temporary and totally disabled from the allowed psychological condition and finds that said condition is not work prohibitive either as to the injured worker's former position of employment or alternative work positions.
The Industrial Commission finds the report of Dr. Byrnes to be more persuasive. Therefore, the Commission finds that temporary total disability compensation based on the allowed psychological condition is not payable from 01/14/2001 thru 01/16/2002 to the date of this order, as there is no credible medical proof to support such request.
Conclusions of Law:
 {¶ 24} Claimant challenges the commission's denial of TTD compensation. In its order, the commission set forth two separate bases for denying TTD: first, the commission found the opinions of Dr. Nalluri unreliable; second, the commission accepted medical evidence that the depressive disorder was mild and would not prevent claimant from returning to his former employment. If either of these grounds was within the commission's discretion, the court must deny the requested writ.
 {¶ 25} First, it is well established that the commission, as the finder of fact, has sole discretion to evaluate the credibility of the evidence and to weigh the evidence. See, e.g.,State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18; State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373. Indeed, an order supported by "some evidence" must be upheld in mandamus, regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. Id. at 376.
 {¶ 26} Second, it is settled that a medical report cannot support the granting or denial of compensation if it is ambiguous, internally inconsistent, or contradicts another report from the same physician. See, e.g., State ex rel. Chrysler Corp.v. Indus. Comm. (1998), 81 Ohio St.3d 158; State ex rel.Malinowski v. Hordis Bros., Inc. (1997), 79 Ohio St.3d 342;State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649.
 {¶ 27} Third, the commission, once it has rejected a medical opinion in one proceeding, may not later rely on the same medical opinion. State ex rel. Zamora v. Indus. Comm. (1989),45 Ohio St.3d 17.
 {¶ 28} Last, the magistrate notes that, in the subject order, the commission relied in part on a C-84 certification of TTD submitted by Dr. Nalluri. That document is not in the record in mandamus, and, because relator has the burden of proof, the magistrate accepts the commission's characterization of that report.
 {¶ 29} As stated above, one of the bases for denying TTD was the finding of fact that the depressive disorder was mild and did not prevent claimant from returning to his former position. If supported by "some evidence," that finding was sufficient to deny TTD. Pass, supra.
 {¶ 30} The commission, in finding that the depressive disorder was not work-prohibitive, relied on the opinion of Dr. Byrnes regarding the mildness of the impairment resulting from "Depressive Disorder NOS." The magistrate concludes that Dr. Byrnes' opinion with respect to the mildness of the impairment caused by that condition constituted some evidence on which the commission could rely.
 {¶ 31} In his report, Dr. Byrnes unequivocally diagnosed "Depressive Disorder NOS," the condition allowed in the claim. In addition, Dr. Byrnes stated plainly that the impairment from "Depressive Disorder NOS" was mild and would not prevent a return to the former employment.
 {¶ 32} However, Dr. Byrnes indicated that he could not render a definite opinion as to causation of the disorder. He explained that he was unable to reach a conclusion on the matter of causation without further information regarding claimant's retirement. In his report, Dr. Byrnes recognized that one could question whether the depressive disorder was caused by the industrial injury, but he noted on the other hand that claimant denied any mental-health problems or treatment before the injury and reported that the injury and its sequelae were stressful. At one point, Dr. Byrnes reported his impression that retirement was the real stressor, but he then explained that the cause of the retirement was disputed. He stated that he lacked information about the retirement, thus indicating that he lacked sufficient information to determine the cause of the depressive disorder. Specifically, Dr. Byrnes noted that the claimant and the employer disagreed as to whether the retirement was forced by the employer after the industrial injury, and Dr. Byrnes ultimately concluded that it would be useful "to clarify this issue relative to theunderlying cause of his depression." (Emphasis added.) Therefore, although Dr. Byrnes discussed various facts in his discussion, he ultimately declined to state a medical opinion regarding causation with any certainty.
 {¶ 33} The magistrate agrees that, because Dr. Byrnes declined to render a medical opinion on causation, the commission could not rely on his report when determining causation. However, Dr. Byrnes did state a clear, unequivocal, and well-supported opinion on the issues of diagnosis of "Depressive Disorder" and the extent of impairment resulting from it. The magistrate finds no abuse of discretion in the commission's reliance on the medical opinion of Dr. Byrnes regarding the question of whether the depressive disorder caused claimant to be unable to perform his job. Further, the magistrate finds no violation of Zamora
in the commission's reliance on Dr. Byrnes' opinion regarding the question of whether the depressive disorder caused claimant to be unable to perform his job, because the record does not show a commission decision rejecting his opinion on that matter, explicitly or implicitly. The allowance of the claim did not constitute a rejection of Dr. Byrnes' diagnosis nor of his conclusion regarding the mild degree of impairment.
 {¶ 34} The court need not address the commission's alternative reason for denying TTD — the finding that the medical opinions of claimant's physician were unreliable. Because the commission was within its discretion to rely affirmatively on the opinion of Dr. Byrnes, its reasons for rejecting other medical opinions was not a necessary part of a denial of TTD. State exrel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. Thus, the court need not explore the alternative rationale for the denial of TTD.
 {¶ 35} The magistrate concludes that claimant has not met his burden in mandamus of proving that the order was unsupported by some evidence and, accordingly, recommends that the court deny the requested writ.
 /s/ P.A. Davidson 
P.A. DAVIDSON MAGISTRATE